UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN ELLIS,<br><br>    Plaintiff,<br><br>    v.<br><br>J. MARTINEZ, correctional officer,<br><br>    Defendants.<br>_____/ | No. C-12-4278 EMC (pr)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket No. 20)** |

## I. INTRODUCTION

This *pro se* prisoner's civil rights action is now before the Court for consideration of a defense motion for summary judgment. For the reasons discussed below, the motion will be denied and the action will be referred to the *Pro Se* Prisoner Mediation Program.

## II. BACKGROUND

In this action, Benjamin Ellis claims that correctional officer ("C/O") Martinez violated his Eighth Amendment rights by shoving him in his wheelchair into a wall or door on February 1, 2012. The following facts are undisputed unless otherwise noted.

On February 1, 2012, Mr. Ellis was incarcerated at Salinas Valley State Prison. He was a paraplegic confined to a wheelchair. C/O Martinez was working on Facility C as a floor officer in building C-1.

That morning, C/O Martinez was assisting in the release of inmates onto an exercise yard from Facility C. Salinas Valley's security measures required correctional staff to search all inmates before releasing them onto the yard. C/O Martinez conducted the search of Mr. Ellis, who was among the inmates being released to the yard. The parties disagree about what happened next.

1          <u>Mr. Ellis' Version of The Wheelchair Incident</u>:  After Mr. Ellis was searched, C/O Martinez
2  grabbed Mr. Ellis' wheelchair and pushed him back into the building in which he was housed.  Once
3  inside the building, C/O Martinez "ramm[ed] the wheelchair into the closed steel door of 'C' pod
4  and its connecting wall."  Docket # 1 at 7; Docket # 32 at 2.  C/O Martinez "then turned and casually
5  walked away as if nothing just happened."  Docket # 32 at 3.  A short while later, Mr. Ellis was
6  released back to the yard; he wheeled himself out but then stopped due to pain in his left hand, and
7  engaged in conversation with two inmates.  C/O Martinez approached and grabbed the wheelchair
8  by its handles; C/O Martinez said "'you need to go back to the building'" and escorted Mr. Ellis
9  back to his building and his cell without incident, although he refused to answer Mr. Ellis'
10 questions.  Docket # 32 at 3-4.

11         <u>C/O Martinez's Conflicting Version Of The Wheelchair Incident</u>:  After being searched, Mr.
12 Ellis became angry and argumentative so C/O Martinez told him to leave the search area and go to
13 the yard, but Mr. Ellis remained and continued to argue.  C/O Martinez gave Mr. Ellis several direct
14 orders to go to the yard, but Mr. Ellis did not comply.  C/O Martinez became concerned about Mr.
15 Ellis' disruptive behavior spreading to other inmates and creating a dangerous situation.  To avoid
16 further disruption, C/O Martinez ordered Mr. Ellis to return to his unit and Mr. Ellis did so without
17 assistance or difficulty.  About five minutes later, C/O Martinez saw Mr. Ellis out on the yard again,
18 and told him he had to go back inside the unit.  Mr. Ellis started arguing again.  C/O Martinez then
19 pushed Mr. Ellis in his wheelchair back into the building and toward his housing unit in B-pod.  C/O
20 Martinez states: "Inside building C3, I let go of Ellis's chair when we were in the rotunda area near
21 the opened B-pod door and told Ellis to go back to his cell.  I then returned to my duties on the
22 yard."   Docket # 24 at 3.  C/O Martinez did not use any force on Mr. Ellis that day, did not see Mr.
23 Ellis or his wheelchair touch the rotunda walls or pod doors, and had no reason to believe Mr. Ellis
24 sustained any injury or was in pain.  He first learned about Mr. Ellis' claims about two weeks later
25 when he learned Mr. Ellis filed an inmate grievance against him.

26         On February 2, 2012 – the day after the incident in question – Mr. Ellis filled out a health
27 care services request form requesting care for his "sprained hand," which he stated was an "injury
28 caused by C/O Martinez who pushed my wheelchair into a steel door with me sitting in it."  Docket

2

# 32 at 16. The registered nurse who evaluated him noted that she observed "minimal swelling, redness, superficial abrasion 3/4 knuckle (L) hand. Pain [illegible word] 5/10. Able to make a fist, limited." *Id.* The treatment plan was: dressing would be applied to the abrasion, Mr. Ellis would continue taking his existing pain medication (i.e., Tylenol # 3), and Mr. Ellis was instructed to apply ice or heat as appropriate. *Id.* at 16-17; *see also id* at 4.

On February 5, 2012 – four days after the incident – Mr. Ellis submitted another health care services request form in which he mentioned that he had been treated for his sprained hand, and that his "left shoulder must have gotten injured the same time as the hand. It too is sprained, and the pain seems to progress as time goes by. I need to be seen for treatment on my shoulder. It feels torn." *Id.* at 19. He was seen by the same registered nurse on February 9, 2012, who reexamined him and decided he should be seen by a doctor. On February 13, 2013, Mr. Ellis was see by a doctor, who ordered an x-ray of the left shoulder and re-ordered a previously ordered x-ray of the right shoulder, as Mr. Ellis had been receiving ongoing care and pain medication for shoulder pain before the wheelchair incident. The radiologist's report for the February 21, 2012 x-ray found "[n]o acute fracture or dislocation." *Id.* at 21. According to Mr. Ellis, "it was determined that physical therapy (P.T.) would be ordered for both (left & right) shoulders." Docket # 32 at 5.

### III.   VENUE AND JURISDICTION

Venue is proper in the Northern District of California because the events or omissions giving rise to the claims occurred at Salinas Valley State Prison in Monterey County, which is located within the Northern District. *See* 28 U.S.C. §§ 84, 1391(b). The Court has federal question jurisdiction over this action brought under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1331.

### IV.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other

facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, as is the situation with defendant's challenge to the Eighth Amendment claims, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citations omitted).

Where, as is the situation with defendant's qualified immunity defense, the moving party bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. *See Houghton v. Smith*, 965 F.2d 1532, 1536 (9th Cir. 1992). He must establish the absence of a genuine dispute of fact on each issue material to his affirmative defense. *Id.* at 1537; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. When the defendant-movant has come forward with this evidence, the burden shifts to the non-movant to set forth specific facts showing the existence of a genuine dispute of fact on the defense.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Mr. Ellis' verified complaint is considered in opposition to the motion for summary judgment.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be

viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631.

## V. DISCUSSION

The complaint alleged that C/O Martinez's conduct amounted to both excessive force and deliberate indifference to Ellis' safety. The Court found § 1983 claims had been stated under both of these theories of liability for the infliction of cruel and unusual punishment prohibited by the Eighth Amendment to the U.S. Constitution.

Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 317 (1986)). In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7; *see also Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979) (guards may use force only in proportion to need in each situation).

Deliberate indifference to an inmate's health or safety also may violate the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Under the deliberate indifference standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* at 837.

As evident in the "Background" section above, the parties' versions of the incident differ sharply with regard to Mr. Ellis' return to the building in the wheelchair after he was searched for release to the yard. Critically, the parties disagree as to whether C/O Martinez pushed the

5

wheelchair at all, and whether he pushed it in such a manner that it caused Mr. Ellis to be rammed into a wall or door. If believed, Mr. Ellis' version that C/O Martinez shoved his wheelchair forcefully into a wall or door and that he suffered injuries to his hand and shoulder as a result would lead to a conclusion that C/O Martinez used excessive force and/or acted with deliberate indifference to a risk to Mr. Ellis' safety in violation of his Eighth Amendment rights. On the other hand, if believed, C/O Martinez's version that he did not push the wheelchair or its occupant into a wall or door would lead to a conclusion that there was no Eighth Amendment violation because C/O Martinez did not use any force and did not act with deliberate indifference to Mr. Ellis' safety. But summary judgment is not the place for credibility determinations. The Court could not grant judgment in C/O Martinez's favor without accepting his version and disbelieving Mr. Ellis' version of the events that transpired. A trier of fact must hear both versions and decide who to believe. Mr. Ellis has established a "genuine issue for trial'" concerning whether and how hard the wheelchair was pushed into the wall or door on February 1, 2012. *Celotex Corp.*, 477 U.S. at 324 (quoting former Fed. R. Civ. P. 56(e)). Summary judgment therefore is not appropriate on the Eighth Amendment claims. The same factual disputes that preclude summary judgment on the Eighth Amendment claims preclude summary judgment on the qualified immunity defense, as C/O Martinez would not be entitled to qualified immunity under Mr. Ellis' version of the facts.

      C/O Martinez argues that Mr. Ellis' evidence should be rejected under the Supreme Court decision in *Scott v. Harris*, 550 U.S. 372 (2007), which allows a court to reject at the summary judgment stage a version of the facts that is "blatantly contradicted by the record." *Id.* at 380. The Court disagrees, primarily because the evidentiary contradiction in this case differs markedly from that in *Scott*. *Scott* was an excessive force claim that arose out of a police car chase. In *Scott*, plaintiff's description of his cautious and careful driving during the chase was contradicted by a videotape that showed him driving wildly and dangerously during the chase. *See id.* at 379-80. The Court determined that the plaintiff's "version of events is so utterly discredited by the record that no reasonable jury could have believed him." *Id.* at 380. Although *Scott* does not require the existence of a videotape to discredit a plaintiff's version of the facts, a videotape of a moving vehicle has a convincing quality that the still photographs offered here does not. Here, C/O Martinez offers

photographs showing that the footrests of a wheelchair protrude from the front of the wheelchair, thereby suggesting that the footrests (or feet in them) would be the point of impact if the wheelchair was shoved into a wall or door.  Unlike the videotape in *Scott* that showed the car chase in question, C/O Martinez's after-the-fact photographs do not show Mr. Ellis' trip to the building after the search.  The photographs also don't show the process by which the wheelchair would hit the door or wall and do not show the way the occupant of the wheelchair would move upon such an impact, assuming arguendo that an impact occurred.  Not only are the photographs not particularly helpful, C/O Martinez's reasoning is not particularly persuasive.  Just as an occupant of a moving car need not be tied to the front bumper to get injured when that car collides with something, the occupant of a slower-moving wheelchair can suffer injuries to parts of his body that are not the first things to touch the surface with which he collides.  For example, the wheelchair occupant can be hurled forward or sideways upon impact, or can extend his hands to brace himself for an anticipated impact.  C/O Martinez's photographs of a wheelchair near a door and wall do not show that Mr. Ellis' statement that he hurt his hand and shoulder when he was shoved into the wall or door while in a wheelchair to be blatantly contradicted by the record, so that no reasonable jury could believe Mr. Ellis.  The dispute of facts here is the kind that routinely requires denial of summary judgment and is not affected by *Scott*.

C/O Martinez argues in his reply brief that some of Mr. Ellis' witnesses' declarations did not establish that those witnesses had personal knowledge of the wheelchair incident. The Court agrees that the declarations are unclear as to what the inmate-witnesses actually observed.  However, their personal knowledge of lack of it does not change the outcome of the summary judgment motion because Mr. Ellis' own declaration was sufficient to create a triable issue of fact.

## VI.   CONCLUSION

Defendant's motion for summary judgment is **DENIED**.  (Docket # 20.)

Having denied Defendant's motion for summary judgment, and in light of the rather narrow dispute, this case appears a good candidate for the Court's *pro se* prisoner mediation program.  Good cause appearing therefor, this case is now referred to Magistrate Judge Vadas for mediation proceedings pursuant to the *Pro Se* Prisoner Mediation Program.  The proceedings will take place

7

**within one-hundred and fifty days** of the date this order is filed.  Magistrate Judge Vadas will coordinate a time and date for a mediation proceeding with all interested parties and/or their representatives and, **within seven days** after the conclusion of the mediation proceedings, file with the Court a report for the proceedings.  The Clerk will send to Magistrate Judge Vadas a copy of this order.

IT IS SO ORDERED.

Dated: April 21, 2014

_____
EDWARD M. CHEN
United States District Judge

8